THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

GOOD WILL HUNTING CLUB, INC. :
:
:
**Plaintiff** :
v. : 4:11-CV-1152
: (JUDGE MARIANI)
RANGE RESOURCES, INC., et al., :
:
:
**Defendants** :

## MEMORANDUM AND ORDER

### I. Introduction

Before the Court are the parties' cross-motions for summary judgment. For the following reasons, the Court will deny summary judgment to Plaintiff and grant partial summary judgment for Defendants.

### II. Statement of Facts and Procedural History

The parties entered a five-year oil-and-gas lease agreement ("Lease") on June 6, 2006. (Doc. 20, Ex. 1).[1] The relevant portions of the Lease are as follows:

Article 1.1 says the Lease

> shall remain in force for an initial term of five (5) years from the date above stated (hereinafter designated "Primary Term"), and shall continue from year to year thereafter for so long as oil and/or gas or other liquid hydrocarbons are produced in Paying Quantities[2] from the Leased Premises or after the development of the First Well in accord with the provisions of Article 8 below, the

---

[1] Plaintiff entered the Lease with Defendant Great Lakes Energy Partners, LLC, which was later re-named Range Resources-Appalachia, LLC. (Doc. 20, Ex. 3, p. 64, ¶ 2, p. 81). Plaintiff later conveyed by deed 91% of its rights under the Lease to a related entity, G.W. Gas, Inc. (Doc. 21, Ex. A).

[2] "'Paying Quantities' shall be defined as the sale of a sufficient quantity of crude oil and/or natural gas produced from wells developed under the earned acreage of the leased premises to generate gross revenues greater than 150% of the well(s) [sic] actual cost to produce."

1

> Lessee is engaged pursuant to Article 9 of this Agreement in a bona fide attempt to secure or restore the production of oil and/or gas or other liquid hydrocarbons by conducting additional drilling operations on the Leased Premises, or Lessee is engaged in the plugging of wells or the removal of equipment there from [sic] pursuant to the Provisions of Article 19 of this Agreement.

Section 8.1 is entitled FIRST WELL, and it provides: "[u]nless sooner terminated as otherwise herein provided, Lessee shall commence a well on the Leased Premises . . . within five (5) years from [June 6, 2006] and shall drill said well with due diligence." It goes on to say that "[i]n the event the aforesaid well is not commenced within such five (5)-year period, this Agreement shall be automatically terminated in its entirety."

Defendants performed the following actions to prepare for the well drilling. They staked a drill site for the Good Will Hunting Club Unit 5H a year before the lease expired. (Doc. 20, Ex. 2, pp. 18-19, ¶ 9). Defendants also entered several damage release agreements and other agreements with Plaintiff and third parties relating to drilling sites and proposed pipeline locations. (Id. at pp. 30-38, 40-44, 46-47). On June 7, 2006, Defendants entered another lease agreement with Samuel Breining who owned an adjacent property. (Id. at Ex. 3, pp. 83-94). The two properties were pooled into a unit with the lease at issue in this case. Defendants also obtained road rights of way and easements to gain additional access to the well's drill site. (Id. at Ex. 2, p. 16, ¶ 2, pp. 23-25). Defendants also procured permits and approvals from various state and local regulatory agencies.[3] On May 11-12, 2011, Defendants re-staked the

---

[3] Specifically, Defendants obtained a Drilling Permit from the Pennsylvania Department of Environmental Protection on November 17, 2010, and an Erosion and Sediment Control General Permit on August 27, 2010. (Id. at Ex. 4, pp. 121-22, 124). Defendants also procured water use approval from the Susquehanna River Basin Commission on November 19, 2010, and zoning, sewage disposal system, and road bonding permits from Lewis Township on November 19, 2010, April 4, 2011, and May 27, 2011, respectively. (Id. at Ex. 4, p. 99, ¶ 7, pp. 166-67, 174-78, 198, 205).

2

drill site for the well to prepare for construction of the pad site. (*Id.* at Ex. 2, p. 19, ¶ 9). On May 28, 2011, Defendants removed timber and constructed road access to the well site. (*Id.* at ¶ 10). On June 5, 2011, Defendants began constructing the pad site. (*Id.* at ¶ 11). The primary lease was set to expire on June 6, 2011.[4]

Plaintiff's Complaint requested the Court to 1) issue a declaratory judgment finding that the Lease had expired, 2) eject Defendants from the property, and 3) award damages for trespass. (Doc. 1, Ex. B). Defendants timely removed this case from the Court of Common Pleas of Lycoming County on grounds of diversity, and this Court has jurisdiction under 28 U.S.C. § 1332(a).

### III. Analysis

*A. Standard of Review for Cross-Motions for Summary Judgment*

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact." FED. R. CIV. P. 56(a). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). "As to materiality, ... [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party

---

[4] Defendants performed a number of other operations and completed the well soon after June 6, 2011, (*see* Doc. 20, Ex. 5), but the Court will not address these actions because it concludes that the terms of the Lease are ambiguous, thus precluding, at this time, the need to determine whether Defendants "commenced a well" in time to extend the Lease.

3

moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied* 507 U.S. 912 (1993). In this case, the parties have filed cross-motions for summary judgment. (Docs. 32, 40, 45). According to the Third Circuit:

> Cross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.

*Lawrence v. City of Philadelphia*, 527 F.3d 299, 310 (3d Cir.2008) (quoting *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir.1968)). Each movant must show that no genuine issue of material fact exists; if both parties fail to carry their respective burdens, the court must deny the motions. *See Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1023 (3d Cir.2008). When reviewing each motion, the court is bound to view the evidence in the light most favorable to the nonmovant. FED. R. CIV. P. 56; *United States v. Hall,* 730 F.Supp. 646, 648 (M.D. Pa.1980). At the outset, the Court recognizes that there are no issues of material fact other than those arising from the interpretation of the Lease.

*B. Contract Construction*

> [W]hen a written contract is clear and unequivocal, its meaning must be determined by its contents alone. It speaks for itself and a meaning cannot be given to it other than that expressed. Where the intention of the parties is clear, there is no need to resort to extrinsic aids or evidence. Hence, where language is clear and unambiguous, the focus of interpretation is upon the terms of the agreement as manifestly expressed, rather than as, perhaps, silently intended.

*Lesko v. Frankford Hosp.-Bucks Cnty.*, 15 A.3d 337, 342 (Pa. 2011); *see also Steuart v. McChesney*, 444 A.2d 659, 661 (Pa. 1982). "When, however, an ambiguity exists, parol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is patent, created by the language of the instrument, or latent, created by extrinsic or collateral circumstances." *Ins. Adjustment Bur., Inc. v. Allstate Ins. Co.*, 905 A.2d 462, 468 (Pa. 2006). A contract is ambiguous if it reasonably suggests different constructions and is capable of being understood in more than one sense. *Kripp v. Kripp*, 849 A.2d 1159, 1163 (Pa. 2004).

"It is clear also, that every agreement is made and to be construed with due regard to the known characteristics of the business to which it relates; and hence the language used in a contract will be construed according to its purport in the particular business." *Franklin Sugar Ref. Co. v. Howell*, 118 A. 109, 110 (Pa. 1922) (internal citations omitted). In construing a contract, the provisions must be construed as a whole and harmonized, if possible, so that all of the terms are given effect. *Contrans, Inc. v. Ryder Truck Rental, Inc.*, 836 F.2d 163, 169 (3d Cir. 1987). A contract should not be interpreted in a manner that renders provisions meaningless, superfluous, unreasonable, contradictory, or would lead to absurd results. *Lesko*, 15 A.3d at 43; *Contrans*, 836 F.2d at 169.

Plaintiff interprets Article 1.1 to create three discrete conditions that will renew the Lease. During the primary term of the Lease, Defendants must (1) produce oil, gas, or other liquid hydrocarbons in paying quantities, or (2) commence and drill the First Well in accord with the provisions of Article 8 AND engage in additional drilling operations to secure production of oil, gas, or other liquid hydrocarbons pursuant to Article 9 (entitled "Subsequent Wells"),[5] or (3) plug wells/remove equipment from the Leased Premises.

This interpretation of the contract makes sense within the context of the particular business activity at issue. *Franklin Sugar*, 118 A. at 110. In layman's terms, (1) the Lease is extended if a well is producing in "paying quantities." That is, Defendants are earning royalties from the oil, and Plaintiff, as lessor, is receiving a portion of Defendants' royalties; (2) the Lease is extended if (a) the first well had been commenced and drilled but either yielded nothing or depleted itself, and (b) Defendants were seeking oil elsewhere in a subsequent well; (3) the Lease is extended if Defendants are plugging wells/removing equipment from the Leased Premises. In each of these first two conditions, the Defendants are either producing oil or are actively seeking it in subsequent wells after completing the first well, all within the five-year term of the Lease. The parties concede that the well is not producing in paying quantities and that

---

[5] Article 9.1 says in pertinent part:

> In the event that the acreage of the Leased Premises exceeds the lands of the drilling . . . of the First Well and in the event that the First Well drilled by Lessee on the Leased Premises is productive of oil and/or gas and the well is expected to return the investment and operating costs on that well during the anticipated productive life of the well to its economic limit, then Lessee shall drill an additional well on the Leased Premises, . . . as would be drilled by a reasonable [sic] prudent operator acting under the same or similar circumstances. The additional well must be commenced within twelve (12) months after the completion of the last well drilled.

Defendants have not plugged wells/removed equipment. Thus, at first blush, this interpretation appears to favor Plaintiffs.

However, the dispute is over what the Court has identified as condition (2). Defendants contend that condition (2) requires the Court to read Article 1.1 in conjunction with Article 8 and to harmonize the two articles. *See Lesko*, 15 A.3d at 342. The Court agrees with this general rule of contract interpretation, but reading the two Articles in conjunction results in ambiguity. Article 8 says, "[u]nless sooner terminated as otherwise herein provided, Lessee shall commence a well on the Leased Premises . . . within five (5) years from [June 6, 2006] and shall drill said well with due diligence." Article 8 goes on to say that "[i]n the event the aforesaid well is not commenced within such five (5)-year period, this Agreement shall be automatically terminated in its entirety." Defendants seek to interpret Article 8 as requiring only that they commence a well within the primary term, and "thereafter," drill with due diligence.[6] (Docs. 18, 28, 30). That is, the drilling could occur after the primary term expired, so long as Defendants had "commenced" within the primary term, because both times the five-year term is stated, it pertains to commencing a well only and does not explicitly apply to the "and shall drill said well with due diligence" clause.[7] Defendants' interpretation allows Article 8.1 to be internally consistent. However, in light of the Court's interpretation of Article 1.1, the two articles conflict.

---

[6] For the purpose of this analysis, the Court is assuming that Defendants properly "commenced a well" within the primary term. This is not yet a finding of fact and will be determined at trial.

[7] Had the parties intended for Defendants to both commence and drill within five years of signing the Lease, a proper construction of Article 8 could have been, "Lessee shall *commence and drill* a well with due diligence on the Leased Premises within five (5) years of June 6, 2006. In the event the aforesaid well is not *commenced and drilled* within such five (5)-year period, this Agreement shall be automatically terminated in its entirety." A great deal of time, litigation, and resources could have been avoided by more careful construction of the Lease, at its inception.

7

What did the parties mean by "after the *development* of the First Well in accord with the provisions of Article 8.1?" The word "development" implies both commencing and drilling a well, whereas Article 8.1 seems to indicate that only the failure to commence will automatically terminate the Lease. "A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Kripp*, 849 A.2d at 1163. Article 8.1 could reasonably be construed to require only commencement of the first well to avoid termination of the Lease. Article 1.1 could reasonably be construed to require both commencement and actual drilling of the well before extending the Lease. Due to this patent ambiguity, the Court must resort to extrinsic evidence to discern the parties' intent when entering the Lease. Because the parties did not submit evidence on the issue of intent outside of the Lease, the Court must deny the cross motions for summary judgment until it can find facts supporting one interpretation over the other.[8]

Finally, Defendants contend that the Lease is on a form prepared by Plaintiff's consultant, Appalachian Oil & Gas Advisors, L.L.C. (Doc. 28, n.4; *see* Ex. 1, p. 2), so any ambiguities in the Lease should be construed against Plaintiff. *See Pomposini v. T.W. Phillips Gas & Oil Co*, 580 A.2d 776, 778 (Pa. Super. 1990) (citing *Rusiski v. Pribonik*, 515 A.2d 507, 510 (Pa. 1986)). At minimum, this argument suggests to the Court that this was not a standard form contract prepared by Defendants and signed by an unwitting and defenseless landowner. Rather, Plaintiff hired a Consultant who drafted this agreement which was thereby negotiated

---

[8] While Defendants cited a number of cases from outside of this jurisdiction to support their interpretation of the Lease and to indicate how the two conflicting Articles could be reconciled, the Court initially finds the cited cases to be factually distinguishable from the present case.

by both parties. Before deciding the case, the Court would be eager to hear any evidence of contract deliberations and negotiations and what each party's understanding of its rights and obligations were under the Lease.

### C. Who are the Appropriate Defendants?

The named Defendants in this case are Range Resources, Inc., Great Lakes Energy Partners, LLC, and Range Resources-Appalachia, LLC. Defendants have tendered evidence that there is no such entity as Range Resources, Inc., that Great Lakes Energy Partners, LLC changed its name to Range Resources-Appalachia, LLC in 2007 (Doc. 20, Ex. 3, p. 64, ¶ 2, p. 81), and that Range Resources, Corp. is the parent company of Range Resources-Appalachia, LLC. (Doc. 20, Ex. 3, p. 64, ¶ 4). Range Resources, Corp. is not a party to the Lease, and by law, a parent corporation is not liable for the acts of its subsidiaries. *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 484 (3d Cir. 2001) (citing *United States v. BestFoods*, 524 U.S. 51, 69, 118 S.Ct. 1876, 141 L.Ed.2d 43 (1998)). Plaintiff has not disputed any of these arguments. Assuming that Plaintiff intended to sue Range Resources, Corp., instead of Range Resources, Inc. (a non-existent entity), and because Great Lakes Energy Partners, LLC is now Range Resources-Appalachia, LLC, the Court will grant this portion of Defendants' Motion for Summary Judgment (Doc. 17) and dismiss Range Resources, Inc. and Great Lakes Energy Partners, LLC from the case. Thus, the sole remaining Defendant is Range Resources-Appalachia, LLC.

### IV. Conclusion

Therefore, for the abovementioned reasons, the Court denies Plaintiff's Motion for Summary Judgment (Doc. 21) and grants in part and denies in part Defendants' Motion for Summary Judgment (Doc. 17). An appropriate order follows.

Robert D. Mariani
United States District Judge

THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GOOD WILL HUNTING CLUB | : | |
| | : | |
| Plaintiff | : | |
| v. | : | 4:11-CV-1152 |
| | : | (JUDGE MARIANI) |
| RANGE RESOURCES, INC., et al., | : | |
| | : | |
| | : | |
| Defendants | : | |

## ORDER

**AND NOW**, to wit, this **1ST DAY OF MARCH, 2012,** upon review of Plaintiff's Motion for Summary Judgment (Doc. 21) and Defendants' Motion for Summary Judgment (Doc. 17), **IT IS HEREBY ORDERED THAT:**

1. Defendants' Motion for Summary Judgment (Doc. 17) is **GRANTED IN PART AND DENIED IN PART.** Range Resources, Inc. and Great Lakes Energy Partners, LLC are dismissed as defendants from the case. Range Resources-Appalachia, LLC is the sole remaining Defendant in the case.

2. Plaintiff's Motion for Summary Judgment (Doc. 21) is **DENIED.**

Robert D. Mariani
United States District Judge